# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00476-CR

**Gerardo Delgado, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY
### NO. 540,571, HONORABLE GISELA TRIANA, JUDGE PRESIDING

Gerardo Delgado contends that the evidence was factually insufficient to support his conviction in a trial to the court for driving while intoxicated. We will affirm the judgment.

When reviewing the factual sufficiency of the evidence in a criminal trial, we consider all the evidence equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *See Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). We will set aside a verdict for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Stone v. State*, 823 S.W.2d 375, 381 (Tex. App.—Austin 1992, pet. ref'd as untimely filed). The State was required to show that Delgado operated a motor vehicle in a public place while not having the normal use of his mental and physical faculties by reason of the introduction of alcohol into his body. *See* Tex. Pen. Code Ann. arts. 49.01(2)(A) & 49.04(a) (West Supp. 2001).

The testimony in the case came from Delgado and Austin police officers John Long and James Boujemaa. The videotape of the field sobriety tests and the ride to the police station was played for the court.

Officer Long testified that he was on east side of the northbound lanes of Interstate 35 in northern Austin in the early morning hours. He saw a hitchhiker standing on the shoulder and intended to tell him to move. Before Long could do that, he saw a red Ford Thunderbird drift off the northbound lanes onto the shoulder, left-hand tires coming to the line on the right side of the road, causing the hitchhiker to take evasive action to avoid being struck; Long testified that the car came within two or three feet of the hitchhiker, although Long had estimated six to eight feet on the video made at the time of the incident. Long trailed the Thunderbird at the speed limit of sixty-five miles per hour until he saw it pull within about three feet of the rear bumper of a small pickup truck at that speed. At that point, Long activated his overhead lights and stopped the Thunderbird. Long testified that Delgado, the driver of the Thunderbird, said he had not seen the hitchhiker. Long said he summoned the DWI unit after smelling a strong odor of alcohol on Delgado's breath. When Officer Boujemaa with the DWI unit arrived, Long went back to try to find the hitchhiker but could not find him.

Officer Boujemaa testified that, before he administered the field sobriety tests, he saw signs that Delgado was intoxicated. He noticed an odor of alcohol and that Delgado's eyes were bloodshot and glassy. Boujemaa testified that Delgado exhibited all six signs of intoxication on the horizontal gaze nystagmus (HGN) test. He said that, on the walk-and-turn test, Delgado showed four of the eight signs of intoxication—lost balance, taking the wrong number of steps, using arms for

2

balance, and making an improper turn. After Delgado did not complete the one-leg stand successfully (Delgado swayed some and lost his balance shortly before finishing the count to thirty), Boujemaa arrested him for DWI. Boujemaa testified that Delgado thought the time was 12:30 a.m., when the time was actually 3:50 a.m.; Boujemaa testified that such a time lag is consistent with intoxication. Boujemaa testified that Delgado's behavior after his arrest was consistent with intoxication. Delgado was drifting toward sleep on the ride to the police station despite being in some discomfort, probably because of the handcuffs; Boujemaa testified that intoxicated persons often have an adrenalin rush when they are stopped by police, then doze off after arrest when the rush passes.

On cross-examination, Boujemaa conceded some possible alternative causes for the intoxication indicators he observed. He agreed that he interrupted Delgado during the turn-and-walk test to correct the step count and agreed that Delgado might have returned nine steps. He agreed that Delgado walked heel to toe as instructed. Boujemaa agreed that Delgado did not put his foot down during the twenty-eight count of the one-leg stand. He agreed that there was a light in his car shining on Delgado, which Delgado's counsel posited could have caused Delgado to close his eyes, and Boujemaa agreed that Delgado never actually went to sleep. Boujemaa also agreed that the position in which arrestees are transferred—hands cuffed behind their back sitting in the backseat—is not the most comfortable and could account for wincing.

Delgado testified that he was tired, was not intoxicated, and did not come close to either the hitchhiker or the pickup. He said he had worked twelve-and-a-half to thirteen hours at his computer sales job before leaving between 8:30 p.m. and 9:00 p.m. He got a sandwich and drove to Sixth Street, arriving around 11:00 p.m. He said he had three beers (two Shiners and a Miller Lite)

3

between then and 1:45 a.m. He ate a slice of pizza, then tried to locate a party and a friend's house; finding neither, he headed for home after 3:00 a.m. Delgado denied telling Long that it was 12:30 when he was stopped at 3:25 a.m. Delgado testified that he was adjusting his radio when he drifted toward the hitchhiker. He said he saw the hitchhiker and came no closer than ten or twenty feet and had plenty of time to correct his path without endangering the hitchhiker; he denied crossing the lane/shoulder line with all but his left wheels, saying he only crossed by four to five feet. He estimated that he came no closer than twelve feet to the pickup.

Delgado differed with the officers regarding their observations of signs of intoxication. Delgado testified that Boujemaa disrupted his counting by interrupting him when he had already started. Delgado started with his feet in the heel-to-toe position and declared, "that's one" then started walking and kept counting; after Delgado took a step and was beginning to take a second step, Boujemaa said "that's one." Delgado said he closed his eyes in the police car but did not fall asleep. He said he shifted around trying to get comfortable. Delgado testified that he had been intoxicated before, and opined that on the night of the arrest he had the normal use of his mental or physical faculties. He testified that three beers over four hours should not leave a 180-pound man like himself intoxicated.

Viewing all of this evidence without favoring the verdict, we cannot conclude that the guilty finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Officer Long observed two instances of unsteady, unsafe driving. Delgado differed as to the degree of the departures from safety, but the differences are not so compelling as to overwhelm the verdict. Both officers testified that Delgado smelled of alcohol and had glassy eyes; although

4

Delgado did not believe he smelled "strongly" of alcohol, a difference of the opinion regarding the pungency of the aroma does not render the judgment unjust. Officer Boujemaa testified that Delgado showed signs of intoxication in all three field sobriety tests—the HGN (all intoxication clues presented), heel-to-toe walk (four of eight clues present), and one-leg stand. Although Delgado testified that Boujemaa threw him off by interrupting his counting nine steps on the walk, the video illustrated that Delgado took as many as three extra steps after counting nine, more than necessary if he had restarted when prompted by the officer; the video also showed Delgado lose balance twice and have some difficulty executing the turn. Although some evidence undermined the officers' testimony and contradicted the verdict, we do not find that such evidence overwhelmed the evidence favoring the verdict or rendered it wrong or unjust.

—

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed: September 20, 2001

Do Not Publish

5